## In re RIEDEL.

Court of Appeals of District of Columbia.

Submitted January 9, 1928. Decided March 5, 1928.

No. 1971.

Patents ☞17(3)—Patent for process to enrich atmosphere enveloping plants with carbonic acid held properly denied for lack of invention.

Application for a patent for a process having for its purpose the enrichment with carbonic acid of the atmosphere enveloping plants, by using carbonic acid containing the exhaust gases resulting from combustion after removal of certain elements, *held* properly denied for lack of invention.

Appeal from the Commissioner of Patents.

Application by Friedrich Riedel for a patent. From a decision of the Commissioner of Patents, rejecting the application, applicant appeals. Affirmed.

H. v. Briesen, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from the decision of the Commissioner of Patents, affirming a decision of the Examiners in Chief, which affirmed the action of the Examiner, rejecting the claim of the application for a patent made by Friedrich Riedel.

The subject-matter of Riedel's application for a patent is a process which has for its purpose the enriching with carbonic acid of the atmosphere which envelops plants, by using carbonic acid containing the exhaust gases resulting from combustion after the removal therefrom of dust, soot, oil, tar, unconsumed hydrocarbons, sulphur compounds, and the like. The application contains seven claims, of which the following are typical:

"1. The process of utilizing waste products of combustion of an industrial operation, which consists in leading said products, freed from mechanical and chemical impurities which in themselves would be directly injurious to plant life, into the direct vicinity of growing plants."

"3. The process which consists in artificially supplying to the atmosphere enveloping growing vegetable matter and in volumes sufficient to elevate the carbon dioxide content of the air adjacent to said growing matter, gases, the ordinary products of combustion of such as result from an industrial operation, relatively rich in carbon dioxide, but freed from mechanical constituents which in themselves would be injurious to vegetable growth.

"7. The process which consists in artificially supplying to the atmosphere enveloping growing vegetable matter, at points adjacent to said growing matter, persistent volumes of carbon dioxide accompanied by gases which are neutral, inert, or harmless in their action on plant life, said gas mixture being derived from otherwise waste products of combustion."

Riedel's specification and claims make it evident that he bases his right to a patent on the utilizing for plant growth of carbon dioxide, derived from the products of combustion and diluted with nitrogen, oxygen, and neutral or inert gases, after the elimination from such products of constituents thereof injurious to plant life.

Removal from the products of combustion of gases and other matter deleterious to health or vegetation is nothing new, and indeed methods and means for accomplishing that result were known and patented by Gilliland and Lambert long prior to the filing of Riedel's application. Development of a new process and method for the purification of combustion gas products may still be the objective of inventive endeavor, but a careful reading of Riedel's specification and claims fails to reveal any purpose on his part to compete in that field of action. Indeed, his specification affirmatively indicates that he relies on known mechanisms for the removal of dust, soot, oil, tar, unconsumed hydrocarbons, sulphur compounds, and other injurious constituents of combustion products. The product which Riedel uses for the promotion of plant growth is not that which comes directly from the chimney or flue, but a product produced by removing from the original material most of its components. The substance so produced contains as its principal elements *carbon dioxide,* nitrogen, oxygen, and inert or neutral gases. Those constituents, after all is said and done, are the principal components of pure air, which contains carbon dioxide, oxygen, nitrogen, and such inert neutral gases as argon and helium. What is the proportion of carbon dioxide, nitrogen, oxygen, and neutral gases in the purified substance "led to the vicinity of growing plants" is not disclosed by the specifications or set out in the claim. For all that appears from the application, the mixture of gases conducted to the plants

does not differ materially from purified air, and, so conducted, brings to the air surrounding the plants nothing more than carbon dioxide, oxygen, nitrogen, argon, and helium, which are the components of air.

Riedel claims that his product is rich in carbon dioxide, but how much carbon dioxide that product contains he fails to state. He does not pretend to say that there is in the gaseous substance produced by his process any element other than carbon dioxide, which beneficially affects plant growth. That carbon dioxide promotes plant development has long been known, and Riedel expressly admits that the increase of plant growth by such means was not originated by him. Riedel's process at best accomplishes nothing more than the bringing of *additional* carbon dioxide to the air enveloping plants. The furnishing of additional carbon dioxide to plants was not first conceived by Riedel, but by Schroder, who as early as March, 1897, secured a patent for supplying plants with a mixture of carbon dioxide and air, and devised the means for regulating the supply of the mixture.

Of course, if Riedel had discovered a *new* combination or mixture of substances, which would permit the use of a larger percentage of carbon dioxide without detriment to plant development, or which would obviate dangers to plant life by the use of such larger percentage, it might be well argued that his conception was novel and patentable. As we read Riedel's application, however, no such conception can be deduced from his specification or claims.

The decision of the Commissioner of Patents is affirmed.

Affirmed.